THALHIMER BROTHERS, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49531. Filed January 29, 1957.

*LeRoy R. Cohen, Jr., Esq.*, for the petitioner.
*John L. Carey, Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined deficiencies in income and excess profits taxes of the petitioner, as follows:

| Fiscal year ended January 31 | Income tax | Excess profits tax |
|---|---|---|
| 1946 | $1, 340. 40 | $32, 465. 64 |
| 1947 | 9, 270. 78 | ---------- |

The issues for decision are:

1. A fire occurred in petitioner's department store, near the end of the first fiscal year here involved; and in the following fiscal year, after the extent of damage had become determinable and a dispute regarding provisions of the insurance policies had been settled, insurance payments (portions of which are conceded to be income) were made to petitioner. In which of petitioner's fiscal years did the undisputed income, derived from portions of the insurance proceeds, accrue and become subject to income tax?

2. Petitioner acquired a contract for the purchase of real estate, under which delivery of title and possession was to be deferred until the happening of specified events that were beyond petitioner's control. In 1947 petitioner paid the vendor $25,000, in addition to the unpaid portion of the contract price, in order to obtain title and possession at an earlier date. Is said $25,000 deductible as a business expense; or should it be regarded as part of the cost of the property?

All other issues presented in the pleadings were waived by petitioner at the trial. The respondent has conceded that one disputed item of $1,239.65 was properly accrued during the fiscal year ended January 31, 1947.

#### FINDINGS OF FACT.

Certain facts have been stipulated; and the stipulation, together with attached exhibits, is incorporated herein by reference.

The petitioner is a Virginia corporation which operates a large department store in Richmond, Virginia. At all times material, it maintained its books of account in accordance with the accrual method of accounting, and on the basis of fiscal years ended January 31. It filed its returns for the 2 fiscal years here involved with the collector of internal revenue for the district of Virginia, at Richmond.

#### *Insurance Issue.*

On January 25, 1946, which was 6 days prior to the close of the first fiscal year here involved, a fire occurred in an escalator which was being installed in petitioner's store by an independent contractor, herein called Perrin. There was a possibility that the fire might have been caused by the negligence of one of Perrin's workmen. Considerable damage resulted to the building, fixtures, equipment, and stock; and there also was interruption in the business.

The principal damage was occasioned by water, rather than by fire; and the extent thereof, which was progressive so long as dampness remained, was not determinable until the properties had dried out—and this was after the close of the fiscal year in which the fire occurred. Experts who examined the carpets could not ascertain, until the carpets had dried, whether any odor would remain or whether the fiber would be ruined. The builders could not determine, until the plaster had dried, whether it would fall or remain unaffected. And the furniture people could not tell immediately whether warping and swelling of the fixtures would be permanent. Also, it was conceivable that business interruptions might result in the following fiscal year, if large areas of carpeting proved to be unusable, and if parts of the store had to be closed temporarily for repairs and replacements.

Petitioner was insured under policies with several companies. Each policy contained two separate clauses regarding "subrogation." One of these clauses read:

*Subrogation.*—This Company may require from the insured an assignment of all right of recovery against any party for loss or damage to the extent that payment therefor is made by this Company.

The other clause read:

*Subrogation.*—Any release from liability entered into prior to loss hereunder by the insured with any person, firm, or corporation, private or municipal, shall not affect this policy or the right of the insured to recover hereunder.

Shortly after the fire, a question arose between petitioner and the several insurers as to whether the latter would settle or pay claims, without an assignment by petitioner of all rights to damages which it might have against the contractor, Perrin. By mutual agreement, however, this question was held in abeyance pending determination of the amounts of loss. Proofs of loss were not filed by petitioner with the insurers until about August 30, 1946; and at that time the amounts of loss were agreed upon, as follows:

| | |
|---|---:|
| Merchandise stock | $35,562.28 |
| Building and escalator | 6,920.41 |
| Furniture and fixtures | 10,854.90 |
| Business interruption (use and occupancy) | 24,612.46 |
| Unearned premium loss | 28.60 |
| Total | $77,978.65 |

After thus settling the amounts of loss, the insurers again brought up the question as to whether they should be subrogated to petitioner's possible claim against Perrin. The insurers pointed to the first of the above-quoted clauses of the insurance policies; demanded that petitioner assign to them any claim which it might have against

Perrin; and suggested that the amounts payable under the policies be "loaned" to petitioner against a "Loan Receipt," subject to repayment out of any recovery that might be made from anyone responsible for the fire. The petitioner, however, objected to all such suggestions. It pointed to the second above-quoted clause; contended that certain agreements which it had made with Perrin prior to the fire were equivalent to a "release from liability," within the meaning of said clause; and refused to subject Perrin to claims that might affect his financial ability to perform certain construction work for petitioner. This dispute was not terminated until November 1, 1946, when all the insurers waived their claims to subrogation rights, and agreed to pay petitioner's losses without use of a loan receipt. Thereafter, on about November 5, 1946, petitioner received payment of the $77,978.65 shown in its proofs of loss.

As of January 31, 1946, petitioner accrued on its books, as receivables from the insurance companies on account of the fire on January 25, 1946, the following amounts:

| | Income account | Principal account |
| --- | --- | --- |
| Merchandise purchases | $26,980.08 | ------- |
| Overtime pay and supplies | 392.14 | ------- |
| Miscellaneous income | 18,000.00 | ------- |
| Capital expenditures | ---------- | $100.53 |
| | $45,372.22 | $100.53 |

Subsequently, when the insurance proceeds of $77,978.65 were received on November 5, 1946, petitioner attributed part of such proceeds to the prior year accruals, and distributed the balance to accounts of its fiscal year ended January 31, 1947, as follows:

| | Income account | Principal account |
| --- | --- | --- |
| Merchandise purchases | $8,582.20 | --------- |
| Building and escalator | 416.87 | $6,503.54 |
| Furniture and fixtures | 10,600.25 | 199.00 |
| Business interruption | 6,174.52 | --------- |
| Unearned premium loss | 28.60 | --------- |
| Miscellaneous | --------- | .92 |
| | $25,802.44 | $6,703.46 |

On its tax return for each of the fiscal years here involved, petitioner reported the amount of insurance income which it had accrued on its books for the particular year. However, the respondent determined, in his notice of deficiency, that all income from the insurance accrued in the fiscal year ended January 31, 1946.

### Real Estate Issue.

On December 28, 1943, petitioner acquired, by assignment from a realty corporation, all of the latter's interest in a contract for pur-

chase of a parcel of real estate located near petitioner's store in Richmond. This real estate was owned by a church, and certain church buildings were located thereon. Petitioner's plan was that, upon acquiring possession of the property, it would remove the buildings and use the land as a parking lot for its store.

The contract provided that the purchase price was $193,000, of which approximately $50,000 was to be paid upon proof of good title. The contract further provided that, after such payment had been made, the trustees of the church would deposit the deed with an escrow agent, for delivery as follows:

6. * * * The Escrow Agent shall hold said Deed and not deliver it until one year shall have elapsed from a presidential proclamation or action of Congress either in direct terms or by declaration, declaring the termination of the existing war between the United States and the powers known as the "Axis" and/or until such time as governmental priorities on labor and building materials shall have been removed; unless within such period the church shall have completed other arrangements which shall not require the erection of a new church building or the remodeling of other property purchased by it. Buyers will pay Escrow costs.

7. When such period shall have elapsed or when such priorities have been removed, or upon demand of the Church and upon sixty (60) days written notice, the Buyers will pay * * * the balance of the purchase price less the aforesaid payment of Fifty Thousand Dollars ($50,000.00) * * * and thereupon the Escrow Agent shall deliver to the Buyers the deed to said property; however, should the Church within the aforesaid period make other arrangements which shall not require the erection of a new church or the remodeling of another building, settlement shall be had upon sixty days written notice from the seller to the Buyers of such decision.

On May 3, 1946, petitioner entered into a supplemental agreement with the trustees of the church and the escrow agent. This agreement, so far as here material, provided in substance:

1. That on June 1, 1946, possession of a specified portion of the property would be delivered to petitioner upon its payment of one-half of the unpaid balance of the purchase price for the entire property, plus—

the additional sum of $12,500, representing a consideration paid to the Trustees by Thalhimer solely for the privilege of gaining possession of said building and land at June 1, 1946, instead of at the later date as heretofore agreed.

2. That on October 5, 1946, possession of the balance of the property, and also the deed for the entire premises, would be delivered to petitioner upon its payment of the balance of the purchase price, plus—

the additional sum of $12,500 representing a consideration paid to the Trustees by Thalhimer solely for the privilege of gaining possession of the portion of said real property conveyed by said deed, other than the portion referred to in paragraph 1 above, at October 5, 1946, instead of at the later date as heretofore agreed.

Thereafter, on about June 1, 1946, petitioner delivered two checks to the trustees of the church in the amounts of $70,126.32 and $12,500; and it then received possession of the first portion of the property. Also, on about October 18, 1946, petitioner delivered two other checks to the trustees, in the amounts of $72,291.75 and $12,500; and it thereupon received possession of the balance of the property, and also the deed for the entire premises.

On its income tax return for the fiscal year ended January 31, 1947, petitioner took a deduction for the two $12,500 payments, with the explanation: "Fee to obtain use of property—$25,000."

The respondent, in his notice of deficiency, disallowed said deduction, and stated:

It is held that cost incurred in the amount of $25,000 in securing early possession of property does not represent a proper deduction in computing your taxable income.

### OPINION.

### *I.*

The first issue requires a determination of the particular fiscal year in which certain undisputed income accrued to the petitioner. This income consisted of amounts received under policies of insurance for losses resulting from fire, water, and business interruption. The petitioner's present contention is that this income did not accrue to it on the date of the fire or during the subsequent 6 days which preceded the termination of its fiscal year ended January 31, 1946; and that said income should be held to have accrued in its fiscal year ended January 31, 1947. Respondent, on the other hand, contends that all of said income accrued to petitioner in the fiscal year of the fire—on the ground that "there was no dispute as to the insurance companies' primary liability."

In *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, the Supreme Court said (at p. 184):

Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues. * * *

In the instant case, we are convinced from an analysis of all the evidence that petitioner's right to receive the insurance income did not become fixed, and hence did not accrue, until after the close of the fiscal year in which the fire occurred. The situation presented is somewhat unusual, in that the water damage to the carpets, plaster, and fixtures continued and progressed after the fire had been extinguished; and that, until after the soaking had ended and the drying

out had been completed, it was impossible to determine what the extent of the water damage might be. Also, the extent of loss from interruption of business could not be determined until after the need for repairing and replacement of carpets, plaster, and fixtures had become ascertainable—which was after the close of the first fiscal year here involved. This situation is quite different from other situations, where the entire loss occurs at one time, and does not continue or progress. Here, the proofs of loss were not filed with the insurers until about August 30, 1946; and it was not until about that time that the amounts of loss were agreed upon.

Moreover, there was a dispute between petitioner and the several insurance companies over the question of subrogation; and this was not settled until November 5, 1946, which was during the second fiscal year here involved. We are satisfied, from our examination of the evidence, that this dispute was bona fide; and that, until the time of the settlement, petitioner's right to receive the insurance income here involved did not become fixed.

By reason of all the foregoing, we decide the first issue in favor of the petitioner. We hold that all the income from insurance accrued and became includible in petitioner's gross income during its fiscal year ended January 31, 1947.

<div align="center">

*II.*

</div>

The second issue is whether petitioner is entitled to deduct, as a business expense, the amount of $25,000 which it paid to the sellers of real estate, in order to obtain title and possession at an earlier date than had been provided in the purchase contract.

In *McCulley Ashlock*, 18 T. C. 405, we held that where a buyer of real estate had paid the sellers a substantial sum of money, in connection with the execution of a "Receipt and Release" agreement under which he obtained possession at an earlier date than had originally been agreed upon, said sum constituted "additional cost of the property."

We think the same is true in the instant case. Here the payment may not be regarded properly as an expense of earning the income of any one year; nor may the benefits expected from the payment be attributed to any one year. Possession of property is one of the principal attributes of ownership; and the right to early or immediate possession may affect materially the use, the desirability, and the market value.

We decide this issue in favor of the respondent. We hold that petitioner's payment of $25,000 was a capital expenditure, and should be regarded as additional cost of the property; and that it is not deductible as a business expense.

<div align="center">

*Decision will be entered under Rule 50.*